848 F.2d 192
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Keith LINDELL; Floyd Deal, Plaintiffs-Appellants,
v.
Ronald D. BELVILLE; Joann Belville, Defendants-Appellees.
 No. 87-3494.
 United States Court of Appeals, Sixth Circuit.
 May 20, 1988.
 
 Before BOYCE F. MARTIN, Jr., WELLFORD and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Keith Lindell and Floyd Deal appeal the district court's opinion and order entering judgment in favor of Ronald D. Belville in this breach of contract action. We affirm.
 
 
 2
 In early January 1983, there were a number of telephone conversations between Floyd Deal and Ronald D. Belville. Belville had recently purchased nearly 80,000 pounds of hydraulic hose, and he was offering to sell the hose to Deal at a price of 50 cents per pound. During several conversations, Deal promised to send a $5,000 deposit to Belville to accept Belville's offer, but Deal failed to do so. Finally, on January 11, Belville agreed to sell the hose to Deal provided, either the $5,000 deposit arrived by wire transfer on or before January 14, or the deposit arrived before Belville sold the hose to another party.
 
 
 3
 On January 14, 1983, Deal finally demonstrated his commitment by wiring the necessary $5,000 to Belville pursuant to Belville's instructions. That wire was The wire was accompanied by written instructions known as an Advice of Credit. These instructions, which indicated that the money was to be forwarded to the Bank One branch in Marion, Ohio, and credited to Belville's personal account, also stated, "The $5,000 deposit on two (2) trailer loads of two (2) inch, four (4) spiral Dayco hose." After receiving the wire from Columbus, a cashier at the Marion branch mailed the deposit slip to Belville because she could not reach him by phone. The deposit slip, received by Belville on January 17, read, "Wire transfer Floyd Deal for 2' wire." The $5,000 deposit was not credited to Belville's account until January 17 because it was not received in Marion on the 14th until after the bank's normal time for closing the day's transactions.
 
 
 4
 Belville, however, decided to reject Deal's acceptance. On Saturday, January 15, the shareholders of Belville's company, Buckeye Hose & Rubber, Inc., met to discuss their company's future. The shareholders voted Belville out of office, and they decided to liquidate Buckeye's inventory as quickly as possible. Sometime between Saturday, January 15 and Wednesday, January 19, Belville inspected the Buckeye inventory with Richard Shoemaker, Buckeye's president. Belville told Shoemaker that he had two potential purchasers for the hose and that one, Deal, had already sent a $5,000 deposit. Belville, however, denied that there was a binding contract with Deal. Because Shoemaker had experienced problems with Deal in the past, Shoemaker told Belville to sell the hose to the other possible buyer. Therefore, Belville mailed the $5,000 back to Deal with a note which read, "Floyd, the bank would not go for our deal so I am returning your $5,000 deposit." The hose was never delivered to Deal, and Deal was unable to find replacement hose on the market.
 
 
 5
 Deal brought an action against Belville in federal district court alleging the breach of an oral contract; jurisdiction was based on diversity of citizenship. Deal sought damages in the amount of $242,000 to compensate him for lost profits.[1] Prior to trial, the parties stipulated that, for this transaction, both were "merchants" as defined under the Uniform Commercial Code, and they agreed to have all issues tried by United States Magistrate.
 
 
 6
 Following a two-day bench trial, the magistrate rendered a judgment in favor of Belville. The magistrate held that, although Deal had proven the existence of an oral contract, this contract was unenforceable under the applicable statute of frauds. The court concluded that the deposit slip which was mailed to Belville, the only writing which could satisfy the merchant-to-merchant exception to the statute of frauds, did not contain a meaningful quantity term as required under section 1302.04(B) of the Ohio Revised Code. (Uniform Commercial Code Sec. 2-201(B).) In the alternative, the magistrate concluded that Deal's proof of lost profits damages was entirely speculative.
 
 
 7
 Deal rejects the magistrate's application of the statute of frauds to preclude enforcement of the oral contract. He argues that two documents, the wire instructions received by Belville's bank and the deposit slip which Belville personally received, satisfy the merchant-to-merchant exception contained in section 1302.04(B). Deal also challenges the magistrate's conclusion that the damages proof was too speculative. We are not persuaded.
 
 
 8
 Under the Ohio statute of frauds, "a contract for the sale of goods for the price of five hundred dollars or more is not enforceable ... unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." O.R.C. Sec. 1302.04(A). The oral contract, though, is not enforceable "beyond the quantity of goods shown in such writing." Id. Under the merchant-to-merchant exception, however, an oral contract is enforceable if "a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents." O.R.C. Sec. 1302.04(B). Deal has no writing signed by Belville to substantiate the oral contract. Therefore, Deal must produce a document which satisfies the following requirements: 1) a writing; 2) sufficient to bind Deal; 3) received by Belville who knows or has reason to know of its contents; 4) stating a specific quantity of goods to be purchased by Deal. We believe that neither the wire instructions sent to Belville's bank nor the deposit slip mailed to Belville satisfies all of these requirements.
 
 
 9
 The wire instructions fail because they were not received by Belville. Under section 1301.01(Z) of the Ohio Revised Code, "[a] person receives a notice or notification when: (1) it comes to his attention; or (2) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications." Clearly, the wire instructions did not come to Belville's attention, and they were not delivered at the place of business through which the contract was made. The message, received by the Columbus branch of Bank One, was never even transmitted to the bank's Marion branch, let alone to Belville personally or to his office. Finally, Belville did not designate the bank as a place for the receipt of communications regarding the alleged contract: Belville merely instructed Deal to wire the $5,000 deposit to the bank.
 
 
 10
 The wire instructions also fail as a document sufficient to bind Belville under the merchant-to-merchant exception because there is no evidence that he had reason to know of its contents. Generally, such instructions do not leave the bank, and Deal has no proof that the bank deviated from this practice in this case. Therefore, Belville would have no reason to know of the contents of this internal bank document.
 
 
 11
 The deposit slip fails to satisfy the exception because it does not contain a meaningful quantity term. This slip provided, "Wire transfer Floyd Deal for 2' wire." Clearly, "for 2' wire" means two-feet wire, not two truckloads of wire. It is not sufficient that Belville may have known how much wire the parties were contracting to exchange; the document must actually contain a meaningful quantity term. The deposit slip does not meet this requirement. Therefore, it fails to satisfy the requirements of the merchant-to-merchant exception.
 
 
 12
 Thus, because Deal cannot produce a document which can remove this oral contract from the general rule of the statute of frauds, the contract is not enforceable. Therefore, we do not reach the damages issue.
 
 
 13
 For the foregoing reasons, the judgment in favor of Belville is affirmed.
 
 
 
 [1]
 Deal arrived at this figure through the following calculations. Costs include: total purchase price of $52,059; $9,890 to cover one-year's interest at 19% on money borrowed to buy the hose from Belville; approximately $20,000 to merchandise the hose. Receipts include: 14,800 feet of two-inch hose to be sold at $20 per foot yielding $296,000; 3,000 feet of inch-and-a-half hose to be sold at $16 per foot yielding $48,000. Deal calculates that total receipts would thus be $344,000, yielding a net estimated profit of $242,000. If we were to accept Deal's numbers, however, the profit figure would be approximately $262,000. Deal, though, has failed to offer any proof to substantiate his inflated calculations